UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANDIS CAGE #757196,

          NO. 2:23-cv-11575

   Plaintiff,

v            HON. LINDA V. PARKER

CURTIS BEARD, *et al.*,     MAG. JUDGE PATRICIA T. MORRIS

   Defendants.

_____

| | |
|---|---|
| Landis Cage #757196 | Joseph Y. Ho (P77390) |
| *In Pro Per* | Assistant Attorney General |
| 18835 Cardoni Street | Attorney for MDOC Defendants |
| Detroit, MI  48203 | Mich. Dept. of Attorney General |
| (313) 850-1173 | Corrections Division |
| | P.O. Box 30217 |
| | Lansing, MI  48909 |
| | (517) 335-3055 |
| | hoj@michigan.gov |

_____/

**MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON THE BASIS OF EXHAUSTION**

MDOC Defendants Beard, Kline, Richards, Young, Howard,

Jackson, Tolsma, Libiran, Griffin, Duiker, Kludy, Winger, Sellers,

Kitchen, McLaughlin, Schiebner, Sherry, and Kissinger, by counsel,

bring this motion under Federal Rule of Civil Procedure 56(a), and ask

the Court to enter an order dismissing the moving MDOC Defendants

from this lawsuit, based on the grounds in the accompanying brief.

On March 20, 2024, the undersigned telephoned Plaintiff Cage to seek his concurrence, but was not able to reach him or leave a voicemail message.

Respectfully submitted,

/s/ Joseph Y. Ho
Joseph Y. Ho (P77390)
Assistant Attorney General
Attorney for MDOC Defendants
Mich. Dept. of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-3055
hoj@michigan.gov

Dated: March 20, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANDIS CAGE #757196,

                                 NO. 2:23-cv-11575

    Plaintiff,

v                        HON. LINDA V. PARKER

CURTIS BEARD, *et al.*,      MAG. JUDGE PATRICIA T. MORRIS

    Defendants.

_____

| | |
|---|---|
| Landis Cage #757196 | Joseph Y. Ho (P77390) |
| *In Pro Per* | Assistant Attorney General |
| 18835 Cardoni Street | Attorney for MDOC Defendants |
| Detroit, MI  48203 | Mich. Dept. of Attorney General |
| (313) 850-1173 | Corrections Division |
| | P.O. Box 30217 |
| | Lansing, MI  48909 |
| | (517) 335-3055 |
| | hoj@michigan.gov |

_____/

**MDOC DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION**

Joseph Y. Ho (P77390)
Assistant Attorney General
Attorney for MDOC Defendants
Mich. Dept. of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-3055
hoj@michigan.gov

Date: March 20, 2024

# TABLE OF CONTENTS

Page

Table of Contents ...............................................................................i

Concise Statement of Issues Presented .....................................................ii

Controlling or Most Appropriate Authority............................................. iii

Statement of Facts ........................................................................... 1

Argument........................................................................................6

I.   Standard of Review ...................................................................6

II.  The Court should dismiss the moving MDOC Defendants
     from this lawsuit. ......................................................................7

     A.   To exhaust claims under MDOC's grievance process, a
          grievant must pursue those claims through all three
          steps of the process and obtain a merits-based decision
          at each step............................................................ 10

     B.   Cage did not exhaust any claims against the moving
          MDOC Defendants. ............................................... 13

Conclusion and Relief Requested........................................................... 16

Certificate of Service……………………………………………………………..17

# CONCISE STATEMENT OF ISSUES PRESENTED

1. 42 U.S.C. § 1997(e)(a) requires a prisoner-plaintiff to properly exhaust all administrative remedies against all defendants prior to filing a suit under 42 U.S.C. § 1983. Cage did not exhaust any claims against the moving MDOC Defendants. Should this Court dismiss the moving MDOC Defendants from this lawsuit?

   Plaintiff's Answer:          "No"
   MDOC Defendants' Answer:     "Yes"

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:

1. <u>Exhaustion</u>:

   *Woodford v. Ngo*, 548 U.S. 81, 90, 92 (2006) (holding that the PLRA requires "proper exhaustion of administrative remedies," which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)").

## STATEMENT OF FACTS

Plaintiff Landis Cage, a parolee under the jurisdiction of the Michigan Department of Corrections (MDOC), brings this lawsuit rising out of the Charles E. Egeler Reception & Guidance Center (RGC), G. Robert Cotton Correctional Facility (JCF), and the Cooper Street Correctional Facility (JCS), all in Jackson, Michigan; the Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan; and the Muskegon Correctional Facility (MCF) in Muskegon, Michigan.  (ECF No. 1.) Specifically, Cage alleges that on June 19, 2020, RGC Classification Director Curtis Beard inaccurately classified him as a sex offender and required him to attend sex offender therapy and that he alerted the following prison officials at their respective facilities or at the Bureau of Health Care Services (BHCS), but they did not take any action:

- At JCF,
  - Psychologist Jill Kline,
  - Psychologist Kelsie (Schafer) Richards, and
  - Prison Counselor (PC) Chris Young;
- At JCS,
  - PC Rhonda Howard,
  - PC Stephanie Jackson,

1

- o Psychologist Kevin Tolsma,

  - o Psychologist Vincent Libiran, and

  - o Corrections Officer (CO) Alan Griffin;

- At IBC,

  - o Psychologist Emily Minnick,

  - o Assistant Deputy Warden (ADW) Brian Hadden,

  - o ADW Sabrina (Davis) Jones, and

  - o PC Rachel Thompson;

- At MCF,

  - o Psychologist Robin Duiker,

  - o ADW John Kludy,

  - o Deputy Warden (DW) Jeanine Winger,

  - o PC Ronald Sellers,

  - o Classification Director Roger Kitchen,

  - o Resident Unit Manager (RUM) April McLaughlin, and

  - o Warden James Schiebner; and

- At BCHS,

  - o Health Services Administrator Marti Kay Sherry, and

  - o Sex Offender Program Coordinator James Kissinger.

(*Id.*) Cage filed his complaint on June 30, 2023. (*Id.*) The moving MDOC Defendants bringing the instant motion are all of the above individuals, except for those working out of IBC (i.e., Minnick, Hadden, Jones, and Thompson.

Under MDOC Policy Directive (P.D.) 03.02.130, "Prisoner/Parolee Grievances" (eff. date Mar. 18, 2019), within two business days of a grievable issue, a grievant must attempt to reconcile the issue with the staff member involved; the grievant must then file a Step I grievance within five business days. (Ex. 1.) To exhaust administrative remedies through the grievance process, a prisoner must pursue grievances through Step III of the grievance process. (*Id.*) A prisoner's Step III Grievance Report tracks all of the grievances that had been filed at Step III. (Ex. 2, Cage's Step III Grievance Report.) Cage's Step III Grievance Report shows that he has pursued seven Step III Grievances, one arising out of MCF and the other six out of IBC:

3

| Grievance No.[1] (Ex. 2 Pincite) | MDOC Def.(s) grieved at Step I | Issue(s) grieved at Step I | Grievance Outcome |
|---|---|---|---|
| MCF-23-04-0312-28c (5–9) | Sellers, McLaughlin, Kitchen, Duiker, Kludy, Winger | Cage has been denied placement in the recommended core program and refused transfer to a facility that has the program.  Cage has also been threatened with retaliatory transfers. | <u>Step I:</u> rejected (multiple issues) <u>Step II:</u> rejection aff'd <u>Step III:</u> rejection aff'd |
| IBC-22-10-1836-28i (10–12) | None | Custody staff is retaliating against Cage and administration allows corruption and cruel and unusual punishment. | <u>Step I:</u> rejected (did not attempt to resolve) <u>Step II:</u> rejection aff'd <u>Step III:</u> rejection aff'd |
| IBC-22-10-1826-28c (13–16) | Hadden | Cage has been written false misconduct tickets. Cage also has not had clean underwear, socks, | <u>Step I:</u> rejected (multiple issues) <u>Step II:</u> rejection aff'd <u>Step III:</u> rejection aff'd |

---

[1] The grievance identifier consists of the facility's three-letter abbreviation, the year of the grievance's filing, the month of the grievance's filing, a number unique to each grievance, and the grievance category code; the identifier is abbreviated using the facility abbreviation and the unique number.

| Grievance No.[1] (Ex. 2 Pincite) | MDOC Def.(s) grieved at Step I | Issue(s) grieved at Step I | Grievance Outcome |
|---|---|---|---|
| | | shirts, and shower shoes. | |
| IBC-22-10-1827-28b (17–20) | None | Cage requests that all video footage be saved, specifically camera footage from healthcare and his housing unit. | Step I: rejected (vague) Step II: rejection aff'd Step III: rejection aff'd |
| IBC-22-08-1438-07b (21–26) | None (attempted to resolve issue with Minnick) | Cage was forced to participate in Michigan Sexual Abuse Prevention Program (MSAPP) even though he had never been convicted of a sex crime, and he had not been granted an administration hearing on the issue. | Step I: denied Step II: denied Step III: denied |
| IBC-22-07-1336-28a (27–30) | Minnick | Minnick scored Cage as a level IV due to his previous screening stating that he needed MSAPP. | Step I: rejected (duplicative of IBC-22-05-0948-29z) Step II: rejection aff'd Step III: rejection aff'd |
| IBC-22-04-0756-29z | Minnick, Hadden | Cage was denied MSAPP and placed on a long wait list; Cage believes this | Step I: denied Step II: denied |

5

| Grievance No.[1] (Ex. 2 Pincite) | MDOC Def.(s) grieved at Step I | Issue(s) grieved at Step I | Grievance Outcome |
|---|---|---|---|
| (31–35) | | was due to his increased security level, which he attributes to misconducts. | <u>Step III</u>: denied |

## ARGUMENT

### I.    Standard of Review

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a summary judgment motion, this Court draws all justifiable inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Christian v. Belcher*, 888 F.2d 410, 413 (6th Cir. 1989).  In considering whether summary judgment is appropriate, this Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial."  *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir. 2000).

6

**II.    The Court should dismiss the moving MDOC Defendants from this lawsuit.**

A prisoner-plaintiff no longer must plead or demonstrate exhaustion to satisfy the PLRA requirements of 42 U.S.C. § 1997e(a). Now, failure to exhaust administrative remedies is an affirmative defense that must be raised by a defendant. *Jones v. Bock*, 549 U.S. 199 (2007). Under 42 U.S.C. § 1997e(a), a prison inmate cannot maintain a civil rights action with respect to prison conditions brought under any federal law if he did not first exhaust all available administrative remedies.

The Supreme Court has held that exhaustion requires proper exhaustion, which means that the prisoner must complete the administrative review process. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90 (quotation omitted). Exhaustion of administrative remedies is a prerequisite to filing a prisoner lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "The plain language of the statute makes exhaustion a precondition to filing an

action in federal court." *Nussle*, 534 U.S. at 523. Exhaustion is an issue that must be determined before the Court can review the merits of the plaintiff's claims and any other asserted defenses.

The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. The PLRA also was intended to "reduce the quantity and improve the quality of prisoner suits." *Id.* at 524.

Requiring proper exhaustion serves all of these goals. It gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. *Ngo*, 548 U.S. at 94. This is important in relation to prison systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 (1973). Thus, it is essential for a plaintiff to properly exhaust his administrative remedies before filing suit by filing a grievance that

8

complies with the prison grievance system regarding the allegations made in his complaint.

An untimely grievance, or otherwise improperly filed grievance, even though appealed through all steps of a grievance procedure, does not fulfill the exhaustion requirement of 42 U.S.C. § 1997e(a). Permitting an untimely or otherwise improperly filed grievance, even though appealed through all steps, to satisfy § 1997e(a)'s requirement "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Ngo*, 548 U.S. at 97. The *Ngo* Court explained:

> A prisoner who does not want to participate in the prison grievance process will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration had no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 95. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to

claim, but it is the prison's requirements, and not the PLRA, that define

the boundaries of proper exhaustion." *Jones*, 549 U.S. at 219.

> **A.    To exhaust claims under MDOC's grievance process, a grievant must pursue those claims through all three steps of the process and obtain a merits-based decision at each step.**

The administrative process applicable to Cage's grievable claims is

governed by MDOC P.D. 03.02.130, "Prisoner/Parolee Grievances" (eff.

date Mar. 18, 2019).  (Ex. 1.)  The policy directive states, in pertinent

part, as follows:

> F. Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement that personally affect the grievant, including alleged violations of this policy and related procedures.
>
> * * *
>
> Q. Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs.  If the issue is not resolved, the grievant may file a Step I grievance.  The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.
>
> * * *
>
> T. Grievances and grievance appeals at all steps shall be considered filed on the date received by the Department.  All

10

grievances and appeals shall be date stamped upon receipt. . . .

* * *

W. Within five business days after attempting to resolve a grievable issue with staff, a grievant wishing to advance a grievance must send a completed Prisoner/Parolee Grievance form (CSJ-247A) to the Step I Grievance Coordinator designated for the facility or other office being grieved. . . .

X. The Grievance Coordinator shall log and assign a unique identifying number to each Step I grievance received, including those that may be rejected.  A computerized grievance tracking system shall be used for this purpose.

Y. After receipt of the grievance, the Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy.  If the grievance is rejected, the grievance response shall state the reason for the rejection without addressing the merits of the grievance. . . .

* * *

DD. A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response.  To file a Step II grievance, the grievant must request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and send the completed form to the Step II Grievance Coordinator designated for the facility, field office, or other office being grieved within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due, including any extensions.  If the office being grieved does not have a designated Grievance Coordinator, the grievant is to send the grievance to the Step II Grievance Coordinator for the facility in which s/he is housed.

EE. The Grievance Coordinator shall log each Step II grievance received, including those that may be rejected.

11

The Grievance Coordinator shall use a computerized grievance tracking system to do so.  The Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy.  If the grievance is rejected, the grievance response shall state the reason for the rejection <u>without addressing the merits of the grievance</u>.  If accepted, the Grievance Coordinator shall assign an appropriate respondent and indicate the date by which the response is due.  The due date shall be within 15 business days after receipt of the grievance, unless an extension is granted as set forth in Paragraph T.

* * *

HH. A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response.  To file a Step III grievance, the grievant must send a completed Prisoner/Parolee Grievance Appeal form (CSJ-247B) to the Grievance Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions.

II. The Grievance Section shall be the respondent for Step III grievances on behalf of the Director.  Each grievance received at Step III, including those that may be rejected, shall be logged on a computerized grievance tracking system. The tracking system shall include information on the subject matter of each grievance received and, for rejected grievances, the basis for the rejection. . . .  The Manager of the Grievance Section shall ensure that any additional investigation is completed as necessary for each Step III grievance accepted, including referral to the Internal Affairs and, for disability issues, to the Equal Employment Opportunity Office, as appropriate, and that a copy of the Step III response is provided to the grievant. Generally, Step III responses will be responded to within 60 business days. The Step III response is final.

12

**B.    Cage did not exhaust any claims against the moving MDOC Defendants.**

The Court should grant the moving MDOC Defendants summary judgment and dismiss them from this lawsuit.  It is uncontroverted that Cage needed to exhaust all available remedies before filing this lawsuit. *Nussle*, 534 U.S. at 523.  The exhaustion requirement of the PLRA "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.  This means that Cage needed to exhaust any grievable claims against MDOC Defendants under MDOC's three-step grievance process: file a Step I grievance where he named each individual defendant and raised—as issues being grieved—the claims asserted in the complaint; pursue that grievance through Step III; and obtain a decision on the merits at each step by following the procedural rules set forth in MDOC P.D. 03.02.130.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("Under the [MDOC's] procedural rules, inmates must include the 'names of all those involved in the issue being grieved' *in their initial grievance*." (emphasis added)); *Hall v. Warren*, 443 Fed. App'x 99, 106 (6th Cir. 2011) (dismissing denial-of-medical-care claim against prison doctor where prisoner's underlying

13

"grievance [was] exclusively concerned with the need for a transfer to a tobacco-free unit"). Here, Cage's Step III Grievance Report shows that he pursued Step III grievances arising out of only two facilities—MCF and IBC. Accordingly, the defendants at RGC (Beard), JCF (Kline, Richards & Young); and JCS (Howard, Jackson, Tolsman, Libiran & Griffin) are subject to dismissal. As the defendants at BCHS were not named in any of the six grievances, they too are subject to dismissal. Although Cage pursued one Step III grievance arising out of MCF (MCF-312), this grievance did not exhaust any claims because it was rejected at Step I and affirmed through Step III. (Ex. 2 at 5–9.) "As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Brooks v. Hardy*, No. 1:16-cv-1336, 2017 WL 6048822, at *2 (W.D. Mich. Dec. 6, 2017) (citations and quotations omitted). To put a finer point on it, at Step I Cage complained about his being denied placement in the recommended core program and being denied transfer to a facility that has the program; Cage then complained about being threatened with retaliatory transfer. (*Id.*) As these two issues are unrelated, MCF-312 was rejected at Step I under

14

MDOC P.D. 03.02.130 ¶ J.1. (Ex. 1 at 2.) Thus, all MDOC Defendants with the exception of the IBC defendants are subject to dismissal.

If the exhaustion prerequisite of the PLRA is to have any meaning, it must carry sanctions for noncompliance with administrative procedural requirements. *Ngo*, 548 U.S. at 95. Here, prior to filing suit challenging the conditions from which this lawsuit arose, the PLRA required that Cage exhaust the administrative remedies regarding those conditions or actions. *Nussle*, 534 U.S. at 523. Moreover, the PLRA requires that Cage comports with all of MDOC's procedural requirements in order to properly exhaust administrative remedies. *Ngo*, 548 U.S. at 95. But, as discussed above, Cage did not properly exhaust any claims against the moving MDOC Defendants before filing the complaint. Cage's failure to present properly any claims against the moving MDOC Defendants via the correct procedures prevented MDOC from addressing and reviewing these claims on the merits. *Ngo*, 548 U.S. at 90, 92. Accordingly, Cage did not complete the administrative review process regarding any claims against the moving MDOC Defendants and cannot now present them in this Court. *Id.* at 88; *Nussle*, 534 U.S. at 523. This Court should therefore dismiss the moving MDOC Defendants from this lawsuit.

15

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, Cage did not exhaust any claims against the moving MDOC Defendants Beard, Kline, Richards, Young, Howard, Jackson, Tolsma, Libiran, Griffin, Duiker, Kludy, Winger, Sellers, Kitchen, McLaughlin, Schiebner, Sherry, and Kissinger.  The Court should therefore dismiss the moving MDOC Defendants from this lawsuit.

Respectfully submitted,

*/s/ Joseph Y. Ho*
Joseph Y. Ho (P77390)
Assistant Attorney General
Attorney for MDOC Defendants
Mich. Dept. of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-3055
hoj@michigan.gov

Dated: March 20, 2024

16

**CERTIFICATE OF SERVICE (E-FILE)**

I hereby certify that on March 20, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel and placed same in U.S. mail to the following non-ECF participant:

Landis Cage #757196
*In Pro Per*
18835 Cardoni Street
Detroit, MI  48203

/s/ *Joseph Y. Ho*
Joseph Y. Ho (P77390)
Assistant Attorney General
Attorney for MDOC Defendants

17