UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LANDIS CAGE,

        Plaintiff,

-v-

Curtis Beard, et al,

        Defendants.   /

Case No. 2:23-cv-11575

Hon. Linda V Parker

Magistrate Judge Patricia T. Morris

**FILED AUG 19 2024 CLERK'S OFFICE DETROIT**

## MOTION TO DENY DEFENDANT'S SUMMARY JUDGMENT MOTION, OR IN THE ALTERNATIVE, ALLOW TIME TO OBTAIN DISCOVERY

Now comes, Plaintiff herein, Landis Cage, proceeding in pro per and pursuant to Fed. R. Civil P. 56(d) and 56(e) he moves this Honorable Court to deny Defendants' Motion for Summary Judgment because the facts are in dispute, or in the alternative, defer consideration on the motion until discover is provided. Mr. Cage states as follows in support:

1) Pursuant Fed R. Civ. P 56, the movant must carry it's burden in establishing any claimed lack of a material dispute they plead in their motion.

2) That is, in bringing a Motion for Summary Judgment Based on a claimed lack of exhaustion for a claimed failure to resolve the issue, Defendants must prove with specific evidence from the record, that such a failure occurred at Step I, not Step III as they did in this case.

3) Notably, Mr. Cage emphasizes that each party related to grievance process invoked has a duty and must act in good faith, as the Supreme Court pointed out in Ramirez v Collier, 595 U.S. 411, 437, 142 S. Ct. 1264, 212 L. Ed2d 262 (2022):

> "Under the PLRA prison officials and incarcerated individuals share an obligation to act in good faith in resolving disputes. Incarcerated individuals must timely raise their claims through the prison grievance system, and prison officials must ensure the system is a functioning one. To that end, the PLRA requires incarcerated individuals to exhaust the prison administrative grievance process before turning to the courts only where the process is actually "available" 42 USC § 1997e(A). An Administrative process is not available if it is not "capable of use' to obtain 'some relief for the action complained of" Ross v Blake, 578 U.S. 632, 642, 136 S. Ct. 1850, 195 L. Ed2d

1

117 (2016). Availability is a practical determination that requires consideration both whether the administrative system is accessible as designed and whether prison administrators and officers ensure meaningful access to it in practice. See id at 643-644, 136 S. Ct. 1856, 195 L. Ed2d 117."

4) While that decision points out that Staff can make a grievance process unavailable, that decision also compels the parties to act in good faith, which Defendants must establish in carrying their burden, but failed to do so in this case:

> "Prisoners are no longer required to demonstrate exhaustion in their complaints. See Jones v Bock, 549 U.S. 199, 216, 127 S. Ct. 910, 166 L. Ed22d 798 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under PLRA," which the defendant bears the burden of establishing."

(Smith v Brock, 2023 U.S. Dist. LEXIS 91855, (Case No. 1:22-cv-149)

5) Also in Smith, the Sixth Circuit clarified that burden: [w]ith respect to what constitutes proper exhaustion, the Supreme Court has stated that 'the PLRA exhaustion requirement requires proper exhaustion,' defined as 'compliance with an agency's deadline and other critical procedural rules. Woodford v Ngo, 548 U.S. 81, 90-93, 126 S. Ct. 2378, 165 L. Ed2d 368 (2006)." See Smith, at *5.

6) Under the Michigan Department or Corrections Policy Directive 03.02.130, the Grievance procedure is defined as having three steps.

7) First, before filing a Step I grievance, the prisoner must first make an effort to resolve the matter with the staff member to be grieved. (See PD 03.02.130 (W):

> "Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond their control or if the issue is believed to fall within the jurisdiction of Internal Affairs. If the issue is not resolved, the grievant may file a Step I grievance"

8) Once that attempt to resolve fails, the first step of the grievance process becomes relevant, and requires the prisoner to explain his efforts at resolving the issue, and state the basis of his issue clearly and concisely. PD

2

03.02.130(CC)

9) Once submitted the facility Grievance Coordinator reviews the grievance, intentionally searching for a reason to reject the grievance, a focus which does not demonstrate "good faith". (See PD 03.02.130(EE)

> "After receipt of the grievance, the Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy. If the grievance is rejected, the grievance response shall state the reasons for the rejection without addressing the merits of the grievance."

10) If the grievance is not rejected outright, a respondent is assigned to address the issue in the grievance. (PD 03.02.130(EE))

11) If the Grievance is denied, the prisoner must request from the Grievance Coordinator a Step II Grievance Appeal, which must be completed and filed in a specific length of time. (PD 03.02.130(JJ).

12) Once at Step II, the facilities warden is required to investigate and address each grievance brought for review. (See PD 03.02.130 (LL)(1)).

13) Once denied, which is the warden's customary practice, the prisoner is required to bring the issue to the Step III grievance and appeals division in Lansing, all of which are routinely denied without consideration, (PD 03.02.130(OO), and simply a rumber stamp practice and custom.

14) Therefore, in order to establish its defense under the PLRA, opposing counsel had the burden to completely show this court each step of the grievance to demonstrate what grounds they are advancing for dismissal, grounds which are not to be based on ommissions, (as occurred here), but rather should be based on the truth, with specific record support.

15) Thus, while PD 03.02.130(W) provides the first steps necessary before filing a grievance, one of those is the attempt to resolve the issue with staff involved, which provides Defendants' with the burden to produce the first step greivance as that document sets out Plaintiff's efforts at resolving the issue, and the basis of the initial rejection. (PD 03.02.130(EE). (See ECF No. 56).

16) Further, while Mr. Cage, based on Defendants' unsupported allegations, need not respond to Defendants' Motion at all, if he is confident the movant is not entitled to judgment, Nat'l Elec Annuity Plan v Henkels & McCoy Inc., 846 F Appx 332, 349 (6th Cir 2021), Mr. Cage submits that is not the position he seeks to take.

17) Despite that the movant has failed to make the required initial showing that there is no genuine dispute of material facts, they fail to point to specific evidence in the record, (Fed R. Civ. P. 56(c)(1), thus, should this court choose to deny their motion, Mr. Cage will not object.

18) In other words, because the opposing party failed to present this Court with the controlling documents, (Step I Grievance and Respons) which are directly and explicitly relevant to a question of failure to exhaust, then the burden cannot be shifted to Mr. Cage, the non-movant. Celotex Corp v Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L . Ed2d 265 (1986).

19) However, while that failure essentially allows this Court to deny the Defendants' motion outright, and without a response, Mr. Cage submits that coupled with Defendants' presentation of only the Step III grievances in their motion, (MCF 23-04-0312-28c, IBC 22-10-1836-28i, IBC 22-10-1826-28c, IBC 22-10-1827-28b, IBC 22-08-1438-07b, IBC 22-07-1336-28a, and IBC 22-04-0756-29z), their reliance on those do not provide any direct evidence of Mr. Cage's efforts at resolving the matter before submission of a grievance, which is mandated to be documented in the Step I grievance response. PD 03.02.130(EE).

20) Coupled with Defendants' failure to provide all steps of all grievances, Mr. Cage submits that though he had written a number requests to the Grievance Coordinators prior to his release, he had sought all the grievance through a Freedom of Information request, and he has attempted to submit the compelling Rule 45 subpoena to force production of all the grievances, at each step, he has been opposed at every turn.

21) That is, because each of those requests have been delayed, (under Mr. Cage's FOIA request) denied (while incarcerated), and not been provided, (Rule 45 Subpoenas), Mr. Cage has been denied of the evidence he needs to carry his burden as non-movant.

22) That is, in addition to having exhausted a number of grievance, and being thwarted from doing so as to a number of other grievances, absent all grievance submitted at each facility, Mr. Cage is prevented from proving his exhaustion and otherwise from demonstrating the unavailability of the grievance process.

23) As established by the Supreme Court and reiterated by the court in Garrett v Knipper, 2022 U.S. Dist. LEXIS 117630 at *7-*8 (E.D. Ky, 2022) there are exceptions to the exhaustion requirement which, Mr. Cage submits are applicable to the circumstances surrounding a number of grievances filed in this case, none of which have been provided to this court or Mr. Cage:

> "However, there are few limited circumstances where the administrative remedies are rendered "unavailable" to an inmate. Does 8-10 v Snyder, 945 F 3d 951, 954 (6th Cir. 2019)(citing Ross v Blake, 578 US 632, 642, 136 S. Ct. 1850, 195 L. Ed2d 117 (2016). An administrative remedy is considered "unavailable" when (1) it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) the administrative scheme is so opague that it becomes practically speaking, incapable of use; or (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. Ross, 578 U.S., at 643. If a defendant carries its burden of showing that there was a general available administrative remedy and the inmate did not exhaust that remedy, the burden then shifts to the inmate to demonstrate a genuine dispute of material facts that the existing and generally available administrative remedy was effectively unavailable to him. Surles v Andison, 678 F 3d 452, 456 (6th Cir. 2012).

24) Because Defendants have not carried their burden in the first instance, the burden cannot shift to Mr. Cage to establish the necessary material dispute, which he would establish through exhaustion of every step of the grievance process, thwarting of his efforts, and outright intimidation, or the refusal to provide grievance forms, each of which demonstrate the process was unavailable or the

5

grievance was exhausted. (See Exhibit A)

25) That is, without the other steps of the grievance process, or all of the grievances from Bellamy Creek Correctional Facility, Muskegon Correctional Facility, or Parnell Correctional Facility, the Court, and Mr. Cage cannot address opposing counsel unsupported claim. (See Exhibit A).

26) Mr. Cage submits that there is but one conclusion here; opposing counsel intentionally limited the exhibits it presented to Step III grievances only, because providing a complete copy of the grievance packets would show that the presentation of each grievance complied with PD 03.02.130, (including attempt to resolve), and where it did not, there is justification of unavailability for not doing so.

27) Because Defendants failed to support their position, this court has many options based on that failure, however, while another chance to permit opposing counsel to present the entire packet of grievances filed is one course, Mr. Cage does not oppose that options, as it would bring the truth to light.

28) That is, because opposing counsel did not present every step of every grievance filed against the Defendants, Mr. Cage submits to this court that an order be issued that compels the opposing party to present the complete sets of all grievances, Hammond v City of Wilkes-Barre, 600 Fed App'x 833, 837 (3rd Cir. 2015), or, in the alternative refuse to consider the Defendants' unsupported assertion that there was not exhaustion. Deere & Co. v FIMCO Inc., 239 F. Supp 3d 964, 987 (W.D. KY, 2017).

## Relief Sought

I, Landis Cage, Plaintiff herein, pray this Honorable Court will either find that because defendants failed to provide the complete record, their motion must be denied, or in the alternative, that this Honorable Court will order the defendants be required to provide complete copies of every grievance Mr. Cage filed during his incarceration, so that he can oppose Defendants' motion within 45 days of receipt of

those grievances.

## Declaration of Fact

I, Landis Cage, declare under penalty of perjury that the facts stated above are true and accurate.

August 4, 2024

Landis Cage

**EXHIBIT A**

**SWORN AFFIDAVIT OF LANDIS CAGE**

## Sworn Affidavit of Landis Cage

I, Landis Cage, being first duly sworn do declare under penalty of perjury that the facts stated below are the truth and based on my personal knowledge and belief, which if called on to testify, I would do so consistently and truthfully as to those facts:

1. Upon being sentenced by the trail court in relation to a Domestic Violence Charge, I was transferred to the Reception and Guidance Center (RGC), where I was screened and processed. During that process, I was assigned the duty to complete certain programs, one of which was sex offender.

2. Mr. Cage was incorrectly classified as a sex offender by classification director Curtis Beard, while Mr. Cage raise the issues several times at RG&C, Mr. Beard and other stuff, informed Cage that the issue will be corrected once he's placed at a permanent facility.

3. Mr. Cage was done being assessed and classified at the RG&C he was transferred to Jackson Cotton facility where he continued to raise the issue and challenge his incorrect sex offender classification.

4. Mr. Cage continued to write kites to classification and eventually started to write grievances to get this matter resolved, which at this time no responses were given to Mr. Cage. Mr. Cage also had meetings with the psychiatrist at Jackson, Cotton facility about this miss Classification, which Mr. Cage has never been convicted of a sex crime at all.

5. At some time after Landis Cage, was at Jackson Cotton Facility he was transferred then to Jackson Cooper Street facility where he was placed on the waiting list to participate on MSOP/MSAPP. While Mr. Cage was at Jackson Cooper Street, he was told the only way he would be able to gain parole and go home was to complete the MSOP class.

6. Mr. Cage Filed several complaints about his misclassification and also filed a PREA in an unrelated matter which three days later he was to a facility hours away and put in segregation without reason.

7. Mr. Cage was put in segregation at Ionia Bellamy Creek level four for no reason giving at the time other than Mr. Cage filing complaints and grievances. Mr. Cage was at Ionia Bellamy Creek, he was then approached by (Emily Minnick) with details about him, completing MSOP or he will not be released on parole.

8. Mr. Cage continued to file grievances stating the names and times and dates of those all who continued to not resolve and not correct the improper classification as a sex offender when brought to their attention., Mr. Cage also wrote several grievances, kite and family members called the facility to try to get the under control.

9. Mr. Cage was ultimately placed in a sex offender unit and was forced to take MSOP to gain parole. Mr. Cage did not want to fight the system, but wanted justice so he could continue to file grievances and try to get that matter corrected as a resort of Landis exercising his protected conduct at first action was done and retaliation was committed

by several staff members anbd as a result at Ionia Bellamy Creek staff put Mr. Cage in segregation and destroyed all of his legal work and grievances and documents from attorneys and ombudsman office concerning this complaint.

10. Mr. Cage has had a hard time responding to the defendant's motion because defendants have withheld step one step two grievances that will show Mr. Cage properly, exhausted his remedies and try to resolve the issue prior to writing grievances on the MDOC staff.

11. Mr. Cage is asking the court to please subpoena step one, step two records of the grievances from MDOC so that Mr. Cage can present the evidence that Mr. Cage did try to resolve the issue and properly went through the correct steps to file grievances. The defendants and their attorney's only provided step three denial grievances, which does not show Mr. Cage original complaint and issues, nor does it show the names of each individual that was involved or the dates and times of each issue, which makes step one & step 2 grievances very vital and informative to this complaint and also to the defendants motion. Mr. Cage has asked for legal assistance because Mr. Cage is indigent and on government assistance and cannot afford an attorney to help in this case. Mr. Cage ask the court to subpoena and have defendants and Attorney General to turn over all records & documents discovery concerning step one and step two grievance that Mr. Cage filed at RG&C, JCF,JCS,IBC,MCF,SMT facilities so that Mr. Cage can properly respond to defendants incorrect claims that Mr. Cage did not properly exhaust his grievance procedures.

I, Landis Cage, being duly sworn, do declare under penalty of perjury that the above stated facts are true and accurate, based completely on my personal observations and knowledge.

Landis Cage                                          Date: 8-19-24

_Landis Cage_

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LANDIS CAGE,

        Plaintiff,

-v-

Curtis Beard, et al,

        Defendants.   /

Case No. 2:23-cv-11575

Hon. Linda V Parker

Magistrate Judge Patricia T. Morris

## CERTIFICATE OF SERVICE

I, Landis Cage, Plaintiff herein declare under penalty of perjury that I have served a true and accurate copy of Plaintiff's Motion to Deny Defendant's Summary Judgment Motion, or In the alternative, allow time to obtain discovery on Joseph Y. Ho, Michigan Assistant Attorney General, MDOC Division, P.O. Box 30217, Lansing, Michigan 48909. I did so by placing the same in a pre-addressed envelop, with First Class Postage and Certified Mail Return Receipt Requested paid and implemented.

August 19th, 2024

_Landis Cage_
Landis Cage